**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 19 C 3350 |
| | ) | |
| NICOLAS RODRIGUEZ | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In December 2016, Nicolas Rodriguez pled guilty to a charge of unlawful sale of firearms and a charge of distribution of cocaine, with the government dismissing the remaining charges against him, including a charge of unlawful possession of a firearm by an alien unlawfully in the United States. The Court imposed concurrent prison sentences of 60 months and 108 months on the two charges to which Rodriguez pled guilty. Rodriguez appealed his sentence, challenging the Court's application of the Sentencing Guidelines. The Seventh Circuit affirmed. *United States v. Rodriguez*, 884 F.3d 679 (7th Cir. 2018). Rodriguez has now filed a timely *pro se* motion under 28 U.S.C. § 2255 asking the Court to vacate his conviction and sentence based on ineffective assistance of trial counsel. For the reasons stated below, the Court denies Rodriguez's motion. The Court will discuss the relevant facts as needed in addressing each of Rodriguez's claims.

## Discussion

The Sixth Amendment guarantees a person accused of a crime the effective assistance of counsel. *See, e.g., McMann v. Richardson*, 397 U.S. 759, 771 (1970). A

claim of ineffective assistance of counsel is evaluated under a two-part test. First, the defendant must show that counsel's performance was deficient, that is, the performance fell "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Second, the defendant must show that counsel's deficient performance prejudiced his defense," in other words, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 686. This standard applies where, as in this case, the defendant pled guilty rather than going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 52 (1985). When a defendant challenges his guilty plea based on ineffective assistance, to establish prejudice he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 52; *see also Missouri v. Frye*, 566 U.S. 134 (2012). When a defendant challenges his sentence based on ineffective assistance, he must show that "but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010).

**1.     "Prohibited person" finding**

In calculating Rodriguez's offense level under the Sentencing Guidelines, the Court set the base offense level at 20 under U.S.S.G. § 2K2.1(a)(4)(B). That provision of the Guidelines states, in relevant part, that the base offense level is 20 if the defendant was a "prohibited person" at the time of the offense. Application Note 3 says that a prohibited person is "any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1, app. note 3. Section 922(g) lists as prohibited persons, among others, anyone "who, being an alien, is illegally or unlawfully in the United States." 18

2

U.S.C. § 922(g)(5)(A).

Rodriguez argues that if his trial counsel had done a proper investigation, he would have discovered that Rodriguez was not unlawfully in the United States. Specifically, Rodriguez argues that because, at the relevant time, he had a pending application for adjustment of his status to that of legal permanent resident, he was not in the United States without authorization.

The Seventh Circuit has not addressed this point, but other courts have. The Ninth Circuit ruled in *United States v. Latu*, 479 F.3d 1153 (9th Cir. 2007), that an "alien illegally or unlawfully in the United States" means "[a]liens who are . . . not in valid immigrant, nonimmigrant or parole status. The term includes any alien[:] (b) Who is a nonimmigrant and whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted[.] 27 C.F.R. § 478.11(b) (emphasis added)." *Latu*, 479 F.3d at 1159. The court went on to conclude that the fact that an otherwise unauthorized alien has a pending application for adjustment of status—as Rodriguez claims in the present case—does not change this. "[A]bsent a statute preventing [defendant's] removability upon the filing of his application for adjustment of status, we can envision no interpretation that renders [the defendant's] presence anything other than "illegal[ ] or unlawful[ ]." *Id.* The Tenth Circuit has reached a similar conclusion, holding that "an alien's unlawful presence in the United States becomes lawful only after the alien's application for adjustment of status is actually approved." *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1296 (10th Cir. 2008) (citing *United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006)).

This Court agrees. Rodriguez was not lawfully present in the United States at

3

the time of the offense, and the fact that he had applied to make his presence lawful does not alter that. A person's "submission of an application does not connote that [his] immigration status has changed, as the very real possibility exists that the INS will deny [his] application altogether. Therefore, . . . the best that can be said about [the defendant's] unlawful immigration status is that it was in stasis, pending the INS's ruling on his application." *United States v. Lucio*, 428 F.3d 519, 525 (5th Cir. 2005).

Rodriguez also contends that the fact that he received yearly renewals of his work permit pending determination of his application for adjustment of status supports or establishes that he was not unlawfully in the country. The Fifth Circuit rejected this contention in *Lucio*, and this Court agrees. Rodriguez was still "unlawfully within the United States irrespective of the fact that he had received employment authorization." *Lucio*, 428 F.3d at 526. Thus, "he could permissibly be charged under [18 U.S.C.] § 922(g)(5)(A)," and as more pertinent here, he was a "prohibited person" within the meaning of U.S.S.G. 2K2.1(a)(4)(B), which as noted earlier adopts the definitions in section 922(g). *Accord, United States v. Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013).

In sum, though Rodriguez's counsel would not have been making a frivolous argument had he made this point at the sentencing (particularly in view of the absence of binding Seventh Circuit authority), his failure to do so did not affect the sentence, because the argument lacks merit and the Court would have rejected it. Nor did counsel's failure to make the argument constitute objective deficient performance, because "[t]he Sixth Amendment does not require counsel to . . . press meritless arguments before a court." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993); *see also,*

*e.g., Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014).

**2.      Failure to investigate mitigating factors**

Next, Rodriguez argues that his counsel's representation was deficient because he failed to investigate and present to the Court significant mitigating factors relating to the sentence. As mitigating factors, Rodriguez references his "childhood abuse; growing up in [the] foster care system; separation from his children and ex-wife; and how [the confidential informant] threatened him before [he agreed] to participate" in criminal activities. Def.'s 2255 Mot. at 11.

Contrary to Rodriguez's contention, all of this information was presented to the Court in connection with the sentencing, and the Court considered it. Specifically, matters relating to Rodriguez's abuse as a child and other mitigating circumstances were included in the presentence report (PSR) and in the memorandum that counsel filed prior to the sentencing hearing. *See* PSR at 11-12; Def.'s Sentencing Position Paper at 3-9. Rodriguez's counsel also argued relevant mitigating factors strenuously during the sentencing hearing. *See* May 25, 2017 Tr. at 31-37. This included not just a discussion of Rodriguez's difficult upbringing, but also the pressure that the confidential informant, identified as a gang member, had put on him. *See id.* at 36-37. In his motion, Rodriguez does not point to any additional mitigating information that was not referenced in the PSR or by counsel either in writing or orally. Rather, he simply reiterates the circumstances that counsel and the probation officer fully described to the Court. Finally, in imposing sentence the Court expressly acknowledged its consideration of the mitigating factors that counsel had argued. *See id.* at 41, 44-45.

For these reasons, Rodriguez has failed to establish that counsel's performance

5

in this regard was deficient within the meaning of *Strickland*, and he has likewise failed to provide any basis for a finding that any failing by counsel had an impact on the sentence the Court imposed.

### 3. Advice regarding likelihood of deportation

Rodriguez next argues that his counsel's performance was deficient because he gave Rodriguez inadequate advice regarding the deportation consequences of pleading guilty. Specifically, he contends that his counsel improperly advised him of the degree of likelihood of the deportation, and he says that if he had been properly informed, "it is more than likely that his decision" whether to plead guilty "would have been different." Def.'s 2255 Mot. at 15.

It is a well-settled rule that "counsel must inform her client whether his plea carries a risk of deportation." *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). When deportation consequences of a plea are unclear, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.* at 369.

In *Padilla*, the defendant's deportation upon conviction was "presumptively mandatory," but Padilla's attorney told him that he "did not have to worry about being deported." *Id.* at 359. Such is not the case here. Rodriguez was well aware that he would be deported. In his motion, he admits that his counsel informed him of the "presumptively mandatory" deportation risk. Def.'s 2255 Mot. at 14. And in the plea agreement, Rodriguez likewise acknowledged that he understood his deportation was "presumptively mandatory." Plea Agr. ¶ 24. Indeed, as the Court noted at the

6

sentencing hearing, Rodriguez "was already in removal proceedings" at the time of the offenses. May 25, 2017 Tr. at 44.

In his motion, Rodriguez attempts to differentiate his awareness that his deportation was "presumptively mandatory" from the proposition that it was "mandatory," which is what he contends counsel (and presumably the Court) should have told him. Def.'s 2255 Mot. at 15. This amounts to hair-splitting. At his guilty plea hearing, Rodriguez admitted in open court that he understood that if he pled guilty, his deportation was "almost certain." Dec. 13, 2016 Tr. at 13.

Under the circumstances, Rodriguez has no viable claim that counsel's advice was deficient, and his contention that a 100 percent definitive admonition would have caused him to go to trial rather than pleading guilty is not plausible. His claim fails under both parts of the *Strickland* test.

**4.    Failure "to investigate the law during plea negotiations"**

Rodriguez's fourth claim is that trial counsel did not "investigate the law" during plea negotiations and that this somehow affected the sentence that the Court imposed. Def.'s 2255 Mot. at 16. But he offers no elaboration and makes no supporting argument. Rather, Rodriguez simply states that the Court made an unspecified Sentencing Guidelines calculation error. And he makes no attempt to elucidate the point in his reply brief. "[U]nsupported and undeveloped arguments are waived." *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005). The Court overrules Rodriguez's fourth claim.

**5.    Failure to investigate applicable law regarding "buy money" repayment**

Rodriguez's sentence includes a term of supervised release, which in turn

includes a requirement to repay the government "'buy money' in the amount of $4,270 that the defendant received during the commission of the offense." Judg't at 4, ¶ 7. Rodriguez challenges counsel's advice regarding this condition, but he does not say much in support of his claim. He states only that he made no money from the firearm sale and that the government got something of equal value (presumably the firearms) in return for the money. Def.'s 2255 Mot. at 14. He does not dispute that he received $4,270 for the sale.

Rodriguez's claim likely is non-cognizable in a section 2255 proceeding. If one applies the closest analogy—restitution—the Seventh Circuit has held that section 2255 is not available to challenge a restitution order imposed as part of a criminal sentence. *Barnickel v. United States*, 113 F.3d 704, 076 (7th Cir. 1997). The same is likely true here.

Even if that is not the case, Rodriguez's ineffective assistance claim regarding the buy money condition lacks merit. First of all, requiring a defendant to repay buy money that he received as part of an offense of conviction is an appropriate term of supervised release; the Seventh Circuit has expressly so held. *See, e.g., United States v. Williams*, 739 F.3d 1064, 1064-65 (7th Cir. 2014). Second, Rodriguez has not identified any error in the amount the Court has required him to repay. He actually received the funds. The fact that he gave the government something of purportedly equal (or even greater) value via illegal firearms sales is of no consequence. Third, Rodriguez has not specified anything purportedly deficient about his attorney's advice or performance on this issue.

For these reasons, the Court concludes that Rodriguez's fifth claim fails on both

the performance and prejudice aspects of the *Strickland* standard.

## Conclusion

For the reasons stated above, the Court denies Nicolas Rodriguez's motion under 28 U.S.C. § 2255 [dkt. nos. 1, 2] and directs the Clerk to enter judgment denying the motion. In addition, the Court declines to issue a certificate of appealability, because it can find nothing to suggest that the merits of the claims that it has rejected are debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. §2253(c)(2); *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley,* 121 F.3d 1308, 1312 (7th Cir. 1997).

Date: March 9, 2020

_____
MATTHEW F. KENNELLY
United States District Judge